# CHARLESTON

MILLER *et al.*, EXECUTORS, &C., *v.* MITCHELL *et al.*

Submitted September 8, 1905. Decided December 5, 1905.

1. TRIAL COURT—*Continuance—Discretion—Review.*

A trial court has a wide judicial discretion in passing upon a motion for a continuance, and unless its action appears to be plainly wrong, it will not be reversed. (p. 434.)

2. PLEADING—*Amendment, When Allowed.*

"Before a court should allow an amended answer to be filed, it ought to be satisfied that the reasons for it are cogent and satisfactory; that the mistakes to be corrected or facts to be added are made highly probable, if not certain; that they are material; that the party has not been guilty of negligence; and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the original answer was filed."—*Foutty* v. *Poar*, 35 W. Va. 70. (p. 436.)

3. TRUST DEED—*Trustee, Powers of—Payment to Trustee.*

The powers of a trustee are limited by the instrument creating the trust. And where a deed of trust is given to secure a debt, the trustee, as such, has no power to receive payment of the debt, and discharge the debtor, where the deed has not expressly conferred such power. (p. 437.)

4. TRUST DEED—*Personal Representatives—Foreclosure—Application of Personalty.*

Where, after the death of the grantor, it is necessary to invoke equity jurisdiction to foreclose a deed of trust upon specific real estate, given to secure a debt, the court ought to require the personal estate in the hands of the administrator to be first ascertained, and determine how much of it is applicable to the payment of the trust debt, and should require it to be so applied before it decrees a sale of the land in satisfaction thereof. (p. 438.)

Appeal from Circuit Court, Roane County.

Bill by Warren Miller and others against S. E. Mitchell and others. Decree for plaintiffs, and defendants appeal.

*Reversed.*

J. A. A. VANDALE, for appellants.
WALTER PENDLETON, for appellees.

SANDERS, JUDGE:

This is a suit in equity, brought by Warren Miller and others, executors of R. S. Brown, deceased, against the estate of C. T. Mitchell, deceased, B. M. Hensley, and others, to enforce the lien of a trust deed. In the bill it is alleged that on the 28th day of January, 1888, C. T. Mitchell executed to Thomas Ferrell and R. S. Brown, five notes, four of which were for $100 each, payable at one, two, three and four years, respectively, and the other for $97.50, payable. at five years; that Ferrell assigned his interest in the notes to Brown; that afterwards, on the 4th day of June, 1888, Mitchell and wife executed to A. B. Wells, trustee, a deed of trust on forty-nine and three-fourth acres of land, in

Roane county, to secure the payment of said notes; that Mitchell, in his life time, and subsequent to the execution of the deed of trust, conveyed ten acres of said land to B. M. Hensley, and the residue thereof to J. C. Dillard; that both Brown and Mitchell had died before the institution of the suit. Mitchell left surviving him his widow, and four children, infants, who, together with Wells, trustee, W. B. Mathews, sheriff or Roane county, and as such administrator of C. T. Mitchell, deceased, J. C. Dillard and B. M. Hensley, are made defendants to the bill. Jurisdiction is predicated upon the fact of the removal of Wells, the trustee, to the city of Washington, and that he declines to act as such trustee; the death of C. T. Mitchell, and the unsettled condition of the accounts. The bill was filed at July rules, 1900, and at the August term following, Dillard and Hensley tendered their joint demurrer, and Wells, trustee, and Mathews, sheriff, and as such administrator, tendered their separate demurrers, to the bill, all of which demurrers were overruled. Thereupon, Dillard and Hensley tendered their joint answers, in which is alleged that the trustee, Wells, was the attorney for Brown, and that Mitchell had, at various times, paid him sums of money, and in addition thereto had turned over to him several notes as collateral security, to be applied on said trust debt, which notes were collected by Wells, and the proceeds turned over to Brown, but the amounts thereof were never accounted for to Mitchell; and the answer further alleged that the payments, and collections aforesaid, were sufficient to pay off and discharge the lien of the trust deed, and that, in fact, a greater amount than necessary for that purpose was paid. There were filed with said answer several receipts, given by Wells to Mitchell, for money which, it is stated therein, was to be applied on the trust debt. At the same term, the administrator, Mathews, filed his answer, setting up substantially the same facts. The trustee, Wells, filed no answer. A. E. Kenney was appointed *guardian ad litem* for the infant defendants, and by another order entered at said term, was appointed a commissioner to take and state an account between the parties. Kenney, being *guardian ad litem* for the infants, and, therefore, incompetent to act as commissioner, on November 26, 1902, a

decree was entered appointing S. E. Boggess commissioner in his stead.

The commissioner gave notice that on the 18th day of February, 1903, he would proceed to execute the decree of reference, which notice was accepted by all the parties to the suit. After several continuances, the report was closed on the 9th day of March, the commissioner allowing credits of $60.00, and reported a balance due on the trust debt of $681.82. Said report was returned and filed on the 24th day of March, 1903, and on the 7th day of April, following, the defendants, Dillard and Hensley, tendered and asked leave to file their amended answer, to which plaintiffs objected, which objection was sustained. Thereupon, said defendants moved for a continuance of the cause, and tendered in support of their motion the affidavit and supplemental affidavit of J. A. A. Vandale, their attorney, which motion was resisted by plaintiffs, who filed in opposition thereto the affidavit of the commissioner, Boggess. The court refused to continue the cause, and entered the decree complained of.

The first assignment of error is to the action of the court in refusing to continue the cause. In the affidavit filed in support of said motion, it is stated that on the 15th day of March, 1903, the affiant prepared a notice to take the deposition of A. B. Wells in the General Land Office at Washington, on the 23rd day of March, and that said notice was accepted by plaintiffs; that on the 20th day of March, he received a letter from Wells, stating that his deposition could not be taken in the General Land Office, inasmuch as he had no office therein, and that he knew of no special place where it could be taken, and that as J. G. Schilling was his attorney, he would not take any steps in the matter without his advice; that not being acquainted in the city of Washington, the time was too short since receiving the letter from Wells for affiant to ascertain a suitable place for taking his deposition, and give notice thereof as required by law. The affidavit further stated that affiant was informed and believed that the defendants would be able to prove by Wells that he was the agent and attorney for R. S. Brown, and was acting as such when the payments were made to him on the trust debt, and that Wells paid over the same to Brown, and his

personal representatives, and took receipts therefor. That affiant and the defendants did not know of any one else by whom said facts could be proven until the 21st day of March, 1903, when affiant was first informed, and believed, that the fact of the said A. B. Wells being the attorney and agent of the said R. S. Brown at the time aforesaid could be proven by several other witnesses, named, who reside in said Roane county, some fifteen miles from the court house, whose depositions could not be taken in time to be read as evidence in behalf of the defendants at the term at which the affidavit was filed. The affidavit sets forth the materiality of the evidence, and states that if the parties are given time, the affiant has no doubt but that it will be obtained.

As has been noted, Wells entered his demurrer to the bill at the August term, 1900, and while the affidavit for continuance sets forth the reasons why it was impossible to take his depositions between the 15th day of March, 1903, the time at which notice was given, and the time at which the motion for a continuance was made, yet it does not offer, or attempt to offer, any reason or excuse why his deposition was not taken within the period which elapsed between the time of filing his demurrer and the time of giving such notice. It nowhere appears in the affidavit that any diligence whatever was used to secure the deposition of Wells during the time the cause was pending. From the very nature of the pleadings filed by the defendants, they were bound to know that his evidence was material to their defense—in fact, of the most vital importance to them. And while the affidavit states that the other parties named therein will testify that Wells was the agent and attorney of Brown, yet it omits to state that they will testify that he was such agent as to the matter in controversy here. "Upon any ground, and under all the circumstances surrounding the case, the matter of continuance rests in the sound discretion of the trial court, and unless it clearly appears that such discretion has been abused, the action of the court in overruling a motion for a continuance will not be disturbed." *Coal Co.* v. *Railroad Co.*, 57 W. Va. 470. In the light of all the circumstances, we cannot say that the court erred in overruling the motion, the affidavit, taken altogether, not showing that the defendants had used

that degree of diligence in preparing their defense which entitled them to a continuance.

The second assignment of error is to the action of the court in refusing to permit the amended answer of the defendants, Dillard and Hensley, to be filed. This answer was tendered after the report of the commissioner had been returned, and at the same term at which it was filed. In this answer it is alleged that Wells was the attorney for R. S. Brown, and received the payments made to him by Mitchell in that capacity, and that, after the death of Brown, said Wells was the attorney for his executors. The only new matter in the amended answer, which was not contained in the original answer, is that Wells was the attorney for the executors of Brown. "Before a court should allow an amended answer to be filed, it ought to be satisfied that the reasons for it are cogent and satisfactory; that the mistakes to be corrected or facts to be added, are made highly probable, if not certain; that they are material; that the party has not been guilty of negligence; and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the original answer was filed." *Foutty* v. *Poar*, 35 W. Va. 70. There is no apparent reason why the fact of Wells being attorney for the executors, if such were the fact, could not as well have been known to the defendants at the time of the filing of the original, as at the time of filing the amended, answer. Brown died on February 16, 1891, and some of the receipts filed with the original answer are dated before, and some after, his death. The defendants certainly knew in what capacity all of these receipts from Wells were given, at the time they were filed, and knowing this, it should have been alleged in the original answer.

The defendants excepted to the commissioner's report, on the ground that the commissioner, in making the same, refused to hear or consider the evidence offered by the defendants to show the payment of the debt reported therein. In returning his report, the commissioner, speaking in regard to said exceptions, says it is not true, as stated, that he refused to consider any evidence offered by the defendants to prove the credits claimed, but that he refused to allow credits claimed as set forth in the exhibits filed with the answer of the defendants Dillard and Hensley, "for the reasons that said exhibits was.

the only evidence offered by any of the defendants to prove said payments, and your commissioner was of the opinion that said exhibits, considered alone, was improper, incompetent and insufficient evidence to prove the payments and credits claimed by the answers filed in this cause." We do not think that the court erred in confirming the report of the commissioner. The burden of proof was upon the defendants to show that Wells was the attorney for Brown, and that in receiving the payments, he was acting as such attorney. This they nowhere attempt to show, but content themselves by filing as exhibits with their answer the several receipts from Wells. As trustee, he had only such powers as are conferred upon him by statute, and by the terms of the instrument creating the trust, and the power to receive payment of the trust debt is not included in them. "As a general rule a trustee's authority over the trust property is defined and limited by the instrument creating the trust; and he should be guided strictly by its provisions." *Atkinson* v. *Beckett*, 34 W. Va. 584.

And it is claimed as error that the commissioner calculated the interest on all four of the notes from their date to October 26, 1899, and to that added the principal of the notes, and then deducted the $60.00 payment therefrom. The defendants claim that the commissioner should have applied the $60.00 credits on the note on which they were endorsed, and not upon all of them. This contention is correct, and it was error to calculate the interest in the manner in which it was done, but for this error we cannot reverse, because the erroneous amount is only $22.58, and not sufficient to give this Court jurisdiction; but, as the case must be reversed for other error, it should be corrected by the lower court in the future progress of the case. It is also assigned as error that the commissioner failed to give credit for the item of $5.00, stated on the back of the first note as having been paid to Rohr for printing notice of sale. This amount does not affirmatively appear to be a payment on the indebtedness. Before the commissioner should allow it, it must so appear. The burden is upon the defendants to show payments. We cannot say that this amount should have been credited, and, therefore, cannot hold that it was error for the commissioner to disallow it.

Counsel for the defendants make the further claim that the administration accounts of the decedent, Mitchell, should have been settled, and the personal assets first applied to the discharge of the indebtedness. Where the grantor is dead, and it is necessary to invoke equity jurisdiction to enforce a deed of trust upon specific real estate, given to secure a debt, it is necessary, before decreeing a sale of the real estate, to have settlement of the administration accounts, and first apply the personal assets to the discharge of the debt secured by such deed of trust. It is held in *Bierne* v. *Brown's Admr.*, *et al.*, 10 W. Va. 748, that in a suit brought to enforce a vendor's lien against the estate of a vendee, after his death, the court ought to require the personal estate in the hands of the administrator to be first ascertained, and to determine how much of it is applicable to the payment of the purchase money, and should require it to be so applied before it decrees a sale of the land to pay the lien. And Judge Green, in delivering the opinion of the Court in that case, said: "And though a debt so contracted be a lien on particular real estate by a mortgage, or a vendor's lien, this general rule would still be applicable, because the debt was originally a personal obligation on the interstate and the lien on the particular real estate should be regarded merely as a collateral security." *Laidley* v. *Kline, Admx.*, 8 W. Va. 219; *Williams* v. *Buster*, 5 W. Va. 342; *Somerville* v. *Somerville*, 26 W. Va. 484.

The decree being erroneous, it is reversed, and the cause remanded.

*Reversed.*