FIRST WISCONSIN TRUST COMPANY, Plaintiff and Respondent, vs. SAXE and another, Defendants and Respondents: MARINE NATIONAL EXCHANGE BANK OF MILWAUKEE, Defendant and Appellant.

*February 10—May 9, 1933.*

For the appellant there were briefs by *Kaumheimer & Kaumheimer*, attorneys, and *Gifford Alt* and *George H. Likert, Jr.* of counsel, all of Milwaukee, and oral argument by *Leon E. Kaumheimer*.

For the respondent Saxe there was a brief by *Olwell &
Brady* and *William T. Gill,* all of Milwaukee, and oral argu-
ment by *Mr. Gill.*

On the motion for a rehearing a brief for the defendants
Clara L. Meyer and others was filed by *Reginald I. Kenney*
of Milwaukee.

The following opinion was filed March 7, 1933:

NELSON, J.   The appellant contends that the trial court
erred in holding (1) that the payments of $2,500 made by
Mr. Saxe to Hackett, Hoff & Thiermann, Inc., trustee, con-
stituted payment *pro tanto* of the bonds and coupons which
became due on June 1, 1931, and discharged the mortgagor
to that extent, and (2) that the payments made to the First
Wisconsin Trust Company subsequent to June 1, 1931, were
not properly applicable to the payment of any bonds or cou-
pons which matured June 1, 1931, or any part thereof.   Al-
though counsel for appellant makes an able argument based
on the proposition that the bonds are negotiable and that
payment of negotiable instruments can be effected only by
payment to the holder thereof, we do not decide this case on
that ground.   In the case of *Pollard v. Tobin, post,* p. 405,
247 N. W. 453, bonds containing identical provisions with
the bonds herein are held to be negotiable.

The questions which we shall consider are: What was the
nature of the instalment deposits made by the mortgagor
during the six months prior to the time ending June 1, 1931?
Was the trustee, in holding the money deposited with it "as
additional and collateral security," the agent of the mort-
gagor or of the bondholders?

We think these questions can be answered in but one way.
The deed of trust specifically and plainly provided that the
mortgagor would "pay to and deposit with the trustee" on
the first day of each and every month one-sixth of the total

amount of principal and interest which was to become due semi-annually according to the terms of said bonds and that the "moneys so paid or deposited with the trustee shall be held by it as additional and collateral security," etc. Giving to that language its plain ordinary meaning, and in the absence of language providing that the money deposited should be deemed a payment to the trustee as agent of the bondholders, it must be held that the money so deposited was additional collateral security, not a payment to the bondholders or to their authorized agent. Prior to June 1, 1931, the money deposited was not even available for payment to the bondholders. So long as the money had to be held as collateral security, it is impossible to see how it could be considered as a payment *pro tanto* of the bonds or coupons. It seems fairly clear that the trustee, in holding the deposit as collateral security pending the due date of the bonds, was acting as the agent of the mortgagor. It may be said *arguendo* that had the deed of trust required the mortgagor to deposit government bonds as additional and collateral security instead of cash, and had the trustee converted them to its own use, we apprehend that no court would hold that the deposit of such bonds could operate as a *pro tanto* payment of the bonds secured by the deed of trust. There can be no doubt as to what construction Mr. Saxe placed upon the provision of the deed of trust or as to his regarding the trustee as his agent in holding the deposit. Mr. Saxe, in at least three letters which are referred to in the statement of facts, and also over the telephone, definitely instructed the plaintiff bank, as trustee, what to do and what not to do with the moneys deposited with it after June 1, 1931. While a trustee under a mortgage or deed of trust given to secure bonds owes duties to both the mortgagor and bondholders, it must be held in this case that in holding the moneys deposited as additional collateral security the trustee was the agent of the mortgagor.

Respondent Saxe relies on certain language found in *Connell v. Kaukauna,* 164 Wis. 471, 159 N. W. 927, 160 N. W. 1035, as ruling the present controversy in his favor. The trial court, in its decision, cited that case in support of its conclusion that the money paid to and deposited with the trustee constituted payment *pro tanto* of the bonds due June 1, 1931. In the *Connell Case* the question which in general determined that controversy was whether the trustee therein was authorized by the bondholders to receive the payment therein. It was held under the deed of trust in that case that the trustee had no such authority as to the bondholders in general. The *Connell Case* is authority for the proposition that payment to a trustee, who is authorized by the bondholders to receive payments, operates as a payment to the bondholders. It was there said (p. 496) :

"The payment to the trustee not being authorized by the terms of the trust deed, it is clear that it had no authority to receive payment for the bondholders merely because it was trustee. It is true that the coupons and bonds were payable at the office of the Trust Company, but they were so payable only when due. The fact that the bonds and interest coupons were made payable at the office of the Trust Company did not make the Trust Company the agent of the bondholders to receive payment. Money deposited with the Trust Company for that reason remained the property of the payor, and if lost it was the loss of the payor. . . . The authority of the trustee to act for the bondholders is prescribed and limited by the terms of the trust deed, and a payment to the trustee merely as trustee cannot be held to be payment to the bondholders, unless made when and as prescribed by the terms of the deed. *Miller v. Mitchell,* 58 W. Va. 431, 52 S. E. 478; *Kransz v. Uedelhofen,* 193 Ill. 477, 62 N. E. 239; *Fortune v. Stockton,* 182 Ill. 454, 55 N. E. 367; *Schroeder v. Wolf,* 227 Ill. 133, 81 N. E. 13."

The language "unless made when and as prescribed by the terms of the deed" is seized upon as supporting the contention of respondent Saxe. He contends that the moneys

were deposited by him with the trustee pursuant to and as prescribed by the terms of the deed of trust and therefore that its loss should not fall upon him. While the money, strictly speaking, was not deposited "when and as prescribed by the terms of the deed," it was deposited substantially in compliance therewith. The frailty of respondent's contention is found in the fact that the money was deposited with the trustee, not as payment, but for the purpose of creating a fund denominated by Mr. Saxe as a "sinking fund" and which was actually to be held by the trustee "as additional and collateral security" until an instalment of the bonds and coupons matured and could be paid.

It is our opinion that the court erred in construing the instrument in such a way as to make the $2,500 deposit a *pro tanto* payment of the bonds due June 1, 1931. This being our conclusion, it necessarily follows that the moneys now on deposit with the plaintiff must first be used in paying the balance of the amount still due and unpaid on the bonds which matured on June 1, 1931, rather than in paying the bonds which matured subsequently. The deed of trust specifically provides that the monthly payments "shall be paid and applied by the trustee to the payment of the instalments of interest and principal in the order of their maturity, until such funds are exhausted."

*By the Court.*—Judgment reversed, with directions to enter judgment construing the mortgage and deed of trust herein in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on May 9, 1933.