SCHWARTZBURG and wife, Respondents, vs. RAHTJEN, Trustee, and others, Defendants: WAYLAND UNIVERSITY and another, Appellants.

*March 17—April 12, 1938.*

For the appellants the cause was submitted on the brief of *Bender, Trump & McIntyre* of Milwaukee.

*A. W. Schutz* of Milwaukee, for the respondents.

MARTIN, J. Plaintiffs brought this action for declaratory relief, to establish that certain bonds, owned by the appellants and others, which were secured by a first mortgage on real estate owned by the plaintiffs, had been fully paid, and to discharge the lien thereof.

Lewis and wife, original mortgagors, acquired title to the premises June 20, 1921, and were in possession until Au-

gust 1, 1922, on which date, for the purpose of refunding outstanding incumbrances, the trust indenture in question was executed to secure the payment of bonds in the aggregate principal sum of $130,000, maturing serially. The bonds became due and payable August 1, 1931. The trustee, Hackett, Hoff & Thiermann, Inc., went into possession of the mortgaged premises on August 1, 1922. It was authorized so to do by the terms of the trust indenture. The trustee was authorized to manage the property and premises, to make from time to time such repairs or replacements as seemed to said trustee to be judicious, to lease the premises or any part thereof under such terms and conditions as to it should seem best, to collect and receive all rents, income, issues, and profits of the same and any part thereof, and to use and apply any and all rents, issues, and profits so received as follows:

(a) To the payment of the cost of operating and maintaining the buildings on said mortgaged premises by superintendents, managers or servants, agents or attorneys, including the cost of all such repairs and replacements as may have been made by the trustee in its discretion.

(b) To set aside and retain as a commission for its services in operating and maintaining said buildings a sum equal to two per cent (2%) of the rents and income of the premises aforesaid to be computed and allowed monthly.

(c) To the payment of all taxes, insurance premiums, and any other charges payable by the mortgagors hereunder or made a charge upon any or all of the premises hereby mortgaged.

(d) To pay, out of the sum remaining after the foregoing disbursements and deductions, from time to time, the principal and interest on the bonds as they severally mature, upon presentation and surrender of said bonds and coupons as in the said bonds provided:

"Provided, always, if the sum so received by the trustee shall not be sufficient to pay all of the above-mentioned pay-

ments when and as they become due, the first parties hereby covenant and agree to pay to the trustee a sum sufficient to pay the same on demand or in time to prevent the happening of any default or foreclosure."

A summary of the material facts found by the trial court, based largely upon facts stipulated and from documentary evidence, is as follows: That on and prior to the 1st day of August, 1931, the defendant, Wayland University, was the owner and holder for value of such bonds of the aggregate par value of $5,000, numbered 121 to 130, inclusive, each of the par value of $500, each having attached thereto interest coupon No. 18, maturing August 1, 1931, and all of said bonds maturing August 1, 1931.

That on and prior to the 1st day of August, 1931, the defendant, Emilie Netter, was the owner and holder for value of such bonds of the aggregate par value of $1,000, being bonds numbered 133 and 134, each of the par value of $500, each having attached thereto interest coupon No. 18, maturing August 1, 1931, and all of said bonds maturing August 1, 1931.

That with the exception of the bonds owned and held by the defendants, all of the bonds outstanding are held by the defendant, State Bank of Milwaukee, as collateral security for the payment of a loan made by it to the plaintiffs, Edward H. Schwartzburg and wife, in the sum of $55,000, bonds of the aggregate par value of $62,500 having been heretofore surrendered for cancellation by the several owners and holders thereof; that said bonds of the par value of $7,500 and interest coupons attached, being the bonds owned and held by defendants, are the only bonds in controversy in this action.

That Hackett, Hoff & Thiermann, Inc., in its capacity as trustee, took possession of the property and premises on August 1, 1922, and retained possession as such trustee until the 10th day of August, 1931, on which date said trustee resigned, and thereupon the Marine National Exchange Bank

of Milwaukee was appointed and qualified as such trustee. On the 28th day of April, 1937, said bank resigned as trustee, whereupon the defendant, Ernest Rahtjen, was duly appointed and qualified.

That on July 11, 1924, Harry W. Lewis and wife, conveyed the mortgaged premises to the plaintiffs, Edward H. Schwartzburg and Flora Schwartzburg, his wife. Said plaintiffs have ever since been and are now the fee owners of the property and premises in question. That the possession, management, and control of the property and premises was vested in Hackett, Hoff & Thiermann, Inc., until August 10, 1931, at and about which time the possession, management, and control was and ever since has been assumed by and vested in the plaintiffs.

That while said Hackett, Hoff & Thiermann, Inc., in its capacity as trustee, was in possession and control of the mortgaged premises, it did collect sufficient rents and profits to pay and discharge, in full, bonds numbered 121 to 135, both inclusive, being the bonds owned and held by defendants, together with the interest coupons attached, after the payment by it of the items specified above in paragraphs (a), (b), and (c), but that it failed and neglected, notwithstanding such sufficiency of funds, to deliver to the holders of said last-named bonds the principal and accrued interest thereof, notwithstanding that said bonds and accrued interest did mature and become due on the 1st day of August, 1931, except that it did deliver a sum equal to twenty-five per cent of the par value of each of said bonds to the holders thereof and a sum equal to fifty per cent of said coupon No. 18, attached to each of said bonds, being in the aggregate sum of $1,875 on account of principal, and $121.88 on account of accrued interest.

That on June 8, 1931, Hackett, Hoff & Thiermann, Inc., was adjudged a bankrupt in and by the United States dis-

trict court for the Eastern district of Wisconsin; that thereafter the owners and holders of the bonds in controversy in this action did duly and severally file in the office of the clerk of the United States district court, aforesaid, their several claims, wherein they did each severally allege, among other things, that there was due and owing to them from the bankrupt estate, the balance of the principal of their several bonds, to wit, seventy-five per cent thereof, and the balance of coupon No. 18, to wit, fifty per cent thereof. That thereafter said claims were duly allowed at the full amount without any deduction as and for any security, and a first and final dividend of seven and one-third per cent of their respective claims, computed on the full amount thereof, was paid, received, and accepted by them; that said claims were filed in said bankruptcy proceedings as unsecured debts.

That appellants after filing their respective claims in bankruptcy made no demand on the plaintiffs with respect thereto until the month of December, 1936.

That the trustee did not elect to establish a sinking fund, pursuant to section (7), paragraph (e), of the trust indenture.

As conclusions of law, the court found that the trustee elected to take possession of the mortgaged premises and to manage the same under and pursuant to section (7) of the trust indenture. That said election was intended by the trust instrument to be exercised for and in the interest of the bondholders. That the trustee's rights, powers, and liabilities, after it had exercised such election, was that of a mortgagee in possession, and that it became accountable only to the plaintiffs for the surplus, if any, after all payments required under the trust were made.

"That it was plainly the intention of the parties to the trust indenture that the moneys collected by the trustee after the payment of operating expense, taxes, insurance and

other charges, authorized by said section '(7),' and the commission of the trustee belonged to the bondholders, save as to the surplus aforesaid."

That the only obligation assumed by the mortgagors was to pay "if the sum so received by the trustee shall not be sufficient," etc. If the sum received was sufficient to make the payments, there was no further or additional liability on the part of the mortgagors. That the bonds serially numbered 121 to 135 (being the bonds owned and held by the appellants), and the interest coupons attached had been discharged, and that no part of the amount thereof now constitutes a lien against the mortgaged premises.

"That the trustee is authorized and empowered, and shall, by the decree to be entered herein, be directed to release from the lien of the trust indenture and to satisfy of record, in the office of the register of deeds for Milwaukee county, that portion of the mortgaged indebtedness evidenced by bonds serially numbered 121 to 135, both inclusive, and the interest coupons thereto attached, whether or not said bonds and coupons shall have been surrendered for cancellation."

That plaintiffs are entitled, in and by the decree to be entered herein to require the defendants (appellants) to surrender their respective bonds and coupons to the trustee for cancellation.

The appellants contend that the trustee managed the building, received the rents, and made disbursements as the agent of the mortgagors, and that the trustee's failure to apply the amounts required to the payment of the bonds and the interest was a default of the mortgagors' agent, and that the loss must fall on the mortgagors.

The respondents contend that the trustee was acting for and on behalf of the bondholders. The trust indenture authorized the trustee, at the inception of the trust, to take possession of the property, and to hold, use, and manage

same until all bonds and coupons had been paid and retired. Reference has been made to the payments which the trustee was authorized to make. The trial court found, as a conclusion of law, based upon its findings of fact, that the trustee's election (to take possession, manage the property, etc.) was intended by the trust instrument to be exercised for and in the interest of the bondholders. The trustee was not obliged by the terms of the trust instrument to take possession and manage the property. It does provide that:

"It shall be lawful for the trustee personally, or by its attorneys, or agents, to enter into and upon all and singular the property, premises and rights hereby conveyed or intended so to be, and each and every part thereof, and to hold and use the same managing the same by its managers, superintendents or servants," etc.

The trustee received a commission of two per cent of the income for its services. It seems apparent that such arrangement was in the interest of the bondholders. To the investor in the bonds it might well be considered an additional security. The trust instrument required the trustee to use and apply all rents, issues, and profits, (1) to the payment of operating expenses; (2) commission of trustee; (3) taxes, insurance, etc.; (4) payment of the principal and interest on the bonds, "Provided, always, if the sum so received by the trustee shall not be sufficient to pay all of the above-mentioned payments when and as they become due, the first parties [mortgagors] hereby covenant and agree to pay to the trustee a sum sufficient to pay the same on demand or in time to prevent the happening of any default or foreclosure." The trustee was authorized to establish a sinking fund and to retain out of the rents, etc., collected, while in possession and control of the premises, such sums as it should deem reasonably necessary for such sinking funds; any sums remaining after making all of the payments speci-

fied, including those to sinking funds, if established in the discretion of the trustee, to be paid to the mortgagors, provided no default existed under the trust.

The only obligation assumed by the mortgagors was to pay "if the sum so received by the trustee shall not be sufficient," etc. If the sum received was sufficient to make the payments, there was no further or additional liability on the part of the mortgagors.

The fact that appellants filed their claims as unsecured debts in the bankruptcy proceedings of Hackett, Hoff & Thiermann, Inc., is rather persuasive that they regarded the trustee as the agent of the bondholders. They, of course, knew of the rights and authority of the trustee under the trust deed. The bonds contained the following provision:

"Said bonds are issued under and equally secured by a certain deed of trust or mortgage of even date herewith, made by the said Harry W. Lewis and Maude Vaughn Lewis, his wife, to Hackett, Hoff & Thiermann, Inc., as trustee, and reference thereto is hereby made for a complete description of the terms and conditions thereof on which said bonds are issued and secured, and for a description of the security therefor, and the rights of the bondholders in regard thereto."

All of the bonds owned and held by the appellants and other defendants in this action became due and payable August 1, 1931. Prior to said date, the trustee had collected and had in its possession sufficient funds to pay all of said bonds and accrued interest.

In *Will of Church*, 221 Wis. 472, 266 N. W. 210, the trustee, though not in possession of the mortgaged premises, had received from the mortgagor payments sufficient to pay and discharge the maturing bonds and interest; the mortgagor having made the last payment to the trustee the day before the due date of the bonds. The court held that the loss

occasioned by the misapplication or embezzlement by the trustee fell on the bondholders.

The appellants contend that the decision in *First Wisconsin Trust Co. v. Saxe,* 211 Wis. 397, 247 N. W. 456, is decisive of the present appeal. On the facts in that case, the court held the trustee to be the agent of the mortgagor. However, the trust indenture and the facts are clearly distinguishable. There, the mortgagor retained possession and control of the mortgaged premises. The mortgagor had made only a partial payment to the trustee. The trustee did not have in its possession a sum sufficient to pay the full amount of principal and interest on the bonds at maturity. In the case at bar, the trustee had collected prior to August 1, 1931, a sum sufficient to pay all of the principal and interest of the bonds maturing on said date. In the *Saxe Case,* the rule as to the rights and duties of a mortgagee in possession could not be applied because the mortgagor had retained control and possession of the mortgaged premises. In *Wasielewski v. Racke,* 225 Wis. 245, 249, 272 N. W. 846, the court said:

"It is only when the full sum due at any given time for interest or principal, or both, is deposited with the trustee that the mortgagor is entitled to a release. The trust deed does not contemplate the deposit with the trustee of a sum less than the entire principal and interest due at a given time, and there is no provision addressed to such a situation. The mortgagor can find in the trust deed no authority for intrusting such a partial payment to the trustee at the risk of the bondholder. The trustee is an agent to receive full payment only."

The trial court held that the trustee's rights, powers, and liabilities, after he took possession of the premises, were those of a mortgagee in possession. We think this is correct, and that the trustee became accountable only to the

mortgagors for the surplus, if any, after all payments required under the trust were made.

In *Citizens Savings & T. Co. v. Rogers*, 162 Wis. 216, 227, 228, 155 N. W. 155, the court had occasion to consider the rights of a mortgagee in possession. It said:

"Counsel further argue quite strenuously that a mortgagee in possession is not entitled to the rents of a property which he has possession of, and that such rents belong to the mortgagor and that he can be deprived of them through foreclosure proceedings only and by the appointment of a receiver in such proceedings who is directed by the court to collect the rents and apply them in payment of the mortgage indebtedness. . . . However this may be, we think that the mortgagee in possession is entitled to collect the rents accruing on the mortgaged property and to apply them in settlement and satisfaction of the mortgage debt. . . . Some authorities hold that a receiver will not be appointed where a mortgagee is in possession of mortgaged property and caring for it and receiving rents." (Citing foreign cases.)

"This court has frequently held that when a mortgagee obtains peaceable possession of mortgaged property he may retain such possession until his mortgage debt is paid. *Hennesy v. Farrell*, 20 Wis. 42; *Stark v. Brown*, 12 Wis. 572; *Gillett v. Eaton*, 6 Wis. 30; *Tallman v. Ely*, 6 Wis. 244; *Brinkman v. Jones*, 44 Wis. 498, 512. If this right of possession does not carry with it the beneficial use of the mortgaged property it is a barren right indeed, and we hold that peaceable possession carries with it the right to collect rentals although the rentals themselves are not specifically mortgaged.

"The term 'mortgagee in possession' is applied to one who has lawfully acquired actual possession of the premises mortgaged to him, standing upon his rights as mortgagee and not claiming under another title, for the purpose of enforcing his security upon such property or making its income help to pay his debt; but the mere fact that the mortgagee receives the rents and profits does not constitute him a mortgagee in possession, *unless he takes the rent in such a*

*way as to take out of the hands of the mortgagor, the management and control of the estate."* 41 C. J. p. 612, § 5805, citing *Hennesy v. Farrell,* 20 Wis. 46.

It is clear under the terms of the trust deed that the moneys collected by the trustee, after payment of operating expenses, taxes, insurance, and the commission of the trustee, belonged to the bondholders. The trustee was their agent. The misapplication or embezzlement by the trustee of moneys it had collected to pay the bonds and interest, maturing August 1, 1931, is their loss. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.