JUNEAU SQUARE CORP., Wil-Ten Co., Inc., Juneau Square Services, Inc., Ralph W. Conway, Hal Bradley & Associates, Inc., Emil Bartel, Anna Bartel, Vione Perry, as Administratrix of the Estate of Thomas H. Perry, Harold C. Smith, III, as Administrator of the Estates of Harold C. Smith, Jr. and Mildred B. Smith, Jack D. Moertl and John F. Spoden, Plaintiffs-Appellants,

v.

FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, First Wisconsin Development Corporation, First Wisconsin Corporation, Marshall-Michigan Company, Inc., Marshall-Wisconsin Company, Inc., Defendants-Respondents,

AETNA LIFE INSURANCE COMPANY, Defendant.†

Court of Appeals

*No. 83–1034. Submitted on briefs December 11, 1984.—Decided January 21, 1985.*
(Also reported in 364 N.W.2d 164.)

† Petition to review denied.

674

For the plaintiffs-appellants the cause was submitted on the briefs of *Kersten & McKinnon,* with *George P. Kersten, E. Campion Kersten,* and *Ann L. Muchin* of counsel, of Milwaukee.

For respondents First Wisconsin the cause was submitted on the briefs of *Schiff, Hardin & Waite,* with *W. Donald McSweeney, John J. Voortman,* and *Peter V.*

*Baugher* of counsel, of Chicago, Illinois, and *Gibbs, Roper, Loots & Williams,* with *Clay R. Williams* of counsel, of Milwaukee.

For respondent Marshall-Michigan Company the cause was submitted on the briefs of *Burke & Schoetz,* with *John J. Burke* of counsel, of Milwaukee.

Before Moser, Brown and Sullivan, JJ.

SULLIVAN, J.   Juneau Square Corporation and others (collectively, Juneau Square) appeal from a summary judgment dismissing numerous business tort claims against First Wisconsin National Bank of Milwaukee and others (collectively, First Wisconsin) on the ground that the claims were barred by the doctrine of *res judicata* and from an order denying a motion to vacate the judgment.  Because all of the subject claims arose out of the same basic factual situation as gave rise to a prior federal antitrust suit, and because Juneau Square did not assert the subject claims in the previous litigation, we hold that the doctrine of *res judicata* precludes this action.  Accordingly, we uphold the trial court's summary judgment dismissing the claims.

Juneau Square, a developer of office buildings, was asked in 1960 by Aetna Life Insurance Company (Aetna) to build an office building in downtown Milwaukee; the building was conceived, in part, as a means of supplying Aetna's office needs.  The Juneau Square project was to be a three-phase development of an entire block, beginning with Juneau Square South, followed by Juneau Square North, and finally by the largest wing, Juneau Square East.

Juneau Square's principal bank and financial advisor was First Wisconsin, which loaned it over $2 million as working capital.  Long-term financing on the project in the amount of $4.5 million for Juneau Squares South and North was provided by Aetna.  Additional capital was obtained from the named appellants and from respondent,

Marshall-Michigan Company, Inc. (Marshall-Michigan). Marshall-Michigan purchased a one-half interest in the completed portion of the project in the late 1960's.

In late 1968 First Wisconsin embarked on a plan to develop a new location for its headquarters on the east end of Wisconsin Avenue adjacent to the Juneau Square project. At this time the north and south wings of Juneau Square were nearing completion, and construction of Juneau Square East was about to begin. By early 1969, however, Juneau Square was in default on its mortgages to Aetna and Marshall-Michigan in that it owed real estate taxes on the project in the amount of $245,000.

In March, 1969, First Wisconsin's officer in charge of the development of the new headquarters, Richard Holscher, and its attorney, David Shute, sent written instructions to a Chicago lawyer named Harold Shapiro to contact Aetna with whom Juneau Square was then negotiating financing for Juneau Square East. The memorandum, which contained confidential information from First Wisconsin's credit files, instructed Shapiro to tell Aetna that an undisclosed principal (First Wisconsin) wanted to buy in cash, the entire Juneau Square block. Aetna, on meeting with Shapiro, stated it was not interested. However, Aetna thereafter advised Juneau Square that it would not finance Juneau Square East.

Juneau Square sought alternate financing from Metropolitan Life Insurance Company of New York (Metropolitan). During negotiations, Metropolitan contacted an employee of First Wisconsin for an opinion on the Juneau Square property. In early November, 1969, Metropolitan denied financing.

A week after Metropolitan declined financing, Aetna began a mortgage foreclosure action on the existing project based on Juneau Square's failure to pay real estate taxes on the project. Marshall-Michigan, the holder of a mortgage subordinate to Aetna's, was about to cure Juneau Square's default with a check for $245,000,

but decided not to after it met with its lawyers, who also represented First Wisconsin.

Marshall-Michigan met with representatives of First Wisconsin concerning the project and attempted to acquire some control over it. A letter was sent to all Juneau Square tenants directing them to pay their rents into a special bank account, rather than to Juneau Square. Marshall-Michigan believed Juneau Square had been diverting rents from the existing project to the new project, Juneau Square East. At about this time Marshall-Michigan decided to foreclose and sought appointment of a receiver. Receivership was denied upon the court's finding that Marshall-Michigan's letter to the tenants was a wrongful act.

Aetna and Marshall-Michigan then stipulated to permit construction of the east tower on the condition that Juneau Square obtain long-term financing by September 30, 1970. The deadline passed before Juneau Square could get a financing commitment, and Aetna attempted foreclosure. Juneau Square raised defenses and a counterclaim. Aetna and Marshall-Michigan then agreed to a second stipulation, similar to the first, with a deadline of December 31, 1971.

By May, 1971, Juneau Square had negotiated a $14 million financing package with New York Life Insurance Company (NYL). Before the loan was finally approved, NYL's treasurer contacted First Wisconsin requesting a credit check. He was told by memorandum that the property's development in installments had been "bootstrapped all the way," that it was believed that the mortgage held by Aetna was in trouble, and that proceeds from construction loans were not being properly used. NYL rejected the loan application in May, 1971.

Juneau Square thereupon sought financing from Baird & Warner Real Estate Investment Trust (Baird & Warner). The parties were nearing agreement by late December, 1971. There is a dispute as to whether Marshall-

Michigan agreed to withhold entry of its foreclosure judgment to permit a completion of negotiations with Baird & Warner. Juneau Square and Baird & Warner failed to reach an agreement by the December 31 deadline. On January 3, 1972, Marshall-Michigan entered its foreclosure judgment. Aetna followed suit on January 4.

Marshall-Michigan purchased the Juneau Square property for a nominal sum at a February, 1972, sheriff's sale; the property was purchased subject to Aetna's mortgage. Marshall-Michigan then sold its interest in the project to Marshall-Wisconsin Company, Inc. (Marshall-Wisconsin), a subsidiary of First Wisconsin. Marshall-Wisconsin then reached a new mortgagor-mortgagee agreement with Aetna.

Juneau Square still controlled about one-quarter of the Juneau Square block, which quadrant had not been subject to the Aetna and Marshall-Michigan mortgages. Juneau Square tried to get financing for development of a reduced version of the east tower but was unable to obtain credit because Aetna's $5 million deficiency judgment against it was still of record. The agreement between Aetna and Marshall-Wisconsin provided that their mortgage modification agreement would remain unrecorded until First Wisconsin could oust the remaining Juneau Square developers.

According to an affidavit, First Wisconsin approached the president of one of the Juneau Square developers, Wil-Ten, and Wil-Ten's lawyer and offered to relieve them of personal guarantees on a Wil-Ten note to First Wisconsin, provided they helped First Wisconsin acquire the remaining interests in the Juneau Square block held by Juneau Square developers. The offer was rejected.

In September, 1972, Juneau Square commenced suit in the United States District Court for the Eastern District of Wisconsin, alleging violations of various federal antitrust laws by First Wisconsin, its subsidiaries and Mar-

shall-Michigan. After preliminary discovery, the complaint was amended to add Aetna as a defendant.

The gist of the antitrust action was that First Wisconsin and others had conspired to restrain competition in the office rental market in the central business district of Milwaukee. The jury found all defendants, except Aetna, guilty of conspiracy to restrain interstate commerce and awarded damages totaling $6 million. Under the treble damages provision of the Clayton Act[1] judgment was entered in the amount of $18 million.

On motions after verdict, however, the judgment was vacated and a new trial granted. The court reasoned that as the case had been tried on various theories and the jury had been confronted with an unusually complex set of circumstances, the possibility of jury confusion and a miscarriage of justice warranted a second trial on the single theory of restraint of interstate commerce. *See Juneau Square Corp. v. First Wisconsin National Bank of Milwaukee,* 435 F. Supp. 1307 (E.D. Wis. 1977). Before the second antitrust trial, Juneau Square filed the instant action in Milwaukee county circuit court alleging, *inter alia,* conspiracy to injure its business, unfair competition, fraud, tortious interference with business relations, defamation, conversion of trade secrets, and violation of a bank's duty to its customer.

The federal antitrust action proceeded to a second trial. The jury was instructed that Juneau Square was required to prove actual injury to competition. The verdict form asked the question, "Did any of the defendants enter into a contract, combination, or conspiracy with any other person which was in effect at any time since September 22, 1968, and which unreasonably restrained interstate trade or commerce in the leasing of office rental space in the central business district of Milwaukee?" The jury answered the question, "No." Judgment was entered on the verdict, dismissing the antitrust ac-

---

[1] 15 U.S.C.A. § 15(a) (West Supp. 1984).

tion against the defendants. The Seventh Circuit Court of Appeals affirmed. *Juneau Square Corp. v. First Wisconsin National Bank of Milwaukee,* 624 F.2d 798 (7th Cir. 1980), *cert. denied,* 449 U.S. 1013 (1981).

First Wisconsin then moved for summary judgment in the instant case, principally on the ground that the asserted causes of action were *res judicata* and therefore could not be relitigated. The trial court agreed that the federal judgment was conclusive as to all matters raised and all claims or defenses which might have been presented, including the instant claims. The court thus granted First Wisconsin's motion for summary judgment. Juneau Square moved to vacate that judgment; the motion was denied.

## SUMMARY JUDGMENT METHODOLOGY

On review of a summary judgment, our standards are the same as those used by the trial court. *Wright v. Hasley,* 86 Wis. 2d 572, 577–79, 273 N.W.2d 319, 322–23 (1979). Summary judgment is appropriate where the pleadings, depositions, affidavits and other papers on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Sec. 802.08(2), Stats. A moving defendant makes a prima facie case for summary judgment by showing a defense which would defeat the plaintiff. *Kraemer Bros. v. United States Fire Insurance Co.,* 89 Wis. 2d 555, 566, 278 N.W.2d 857, 862 (1979). To defeat such a prima facie case, the plaintiff must set forth facts showing there is a genuine issue for trial. *Id.* at 567, 278 N.W.2d at 862.

The trial court decided that First Wisconsin's asserted defense of *res judicata* defeated Juneau Square's claims and that Juneau Square set forth no facts showing that any genuine issues of fact existed warranting a trial.

Accordingly, the trial court held that First Wisconsin was entitled to judgment as a matter of law. We agree.

## RES JUDICATA

The doctrine of *res judicata* operates to bar relitigation of the same cause of action between the same parties, or their privies, where the first litigation resulted in a valid, final judgment on the merits. *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 944–45 (7th Cir. 1981). The conclusive effect of the prior judgment on the merits is limited to the same cause of action. *Id.* at 944. Juneau Square concedes this general rule and concedes, too, that there is an identity of parties between the previous federal case and the instant state lawsuit. The controversy is over whether the claim or cause of action is the same in both cases.

The trend in the law is to treat all claims arising out of one transaction or factual situation as being part of a single cause of action and to require them all to be litigated together. *See* Restatement (Second) of Judgments § 24 (1982). This is now the rule in Wisconsin, *see DePratt v. West Bend Mutual Insurance Co.*, 113 Wis. 2d 306, 311–12, 334 N.W.2d 883, 885–86 (1983), and the prevailing federal rule, *see Gasbarra v. Park-Ohio Industries, Inc.*, 655 F.2d 119, 121 (7th Cir. 1981).[2] Juneau Square is incorrect in asserting that "[f]ederal law has not adopted the 'transactional view' of 'cause of action.'" Also inaccurate is Juneau Square's assertion that the

---

[2] *See also United Home Rentals, Inc. v. Texas Real Estate Comm'n*, 716 F.2d 324, 328 (5th Cir. 1983); *Isaac v. Schwartz*, 706 F.2d 15, 17–18 (1st Cir. 1983); *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 n. 4 (5th Cir. 1983) (en banc); *James v. Gerber Products Co.*, 587 F.2d 324, 328 n. 5 (6th Cir. 1978); *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1234 (2d. Cir.), *cert. denied*, 434 U.S. 903 (1977).

United States Supreme Court "rejected" the transactional view in *Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 326–28 (1955). The *Lawlor* court held only that a prior judgment could not extinguish claims that did not even exist at the time of the judgment and thus could not possibly have been sued upon at that time.

The trial court relied in part on the Seventh Circuit's *Harper Plastics* decision, *supra,* in ruling that Juneau Square's claims were barred by *res judicata.* Juneau Square, in turn, relies on the same case in arguing that its state law causes of action are not precluded by the prior federal court judgment. Juneau Square cites the following language from *Harper Plastics:*

[T]he primary test for determining if two suits are based on the same cause of action is whether both suits arise out of the same basic factual situation. Yet there may be cases where this test proves too much, since this court has also recognized that a single transaction or occurrence can give rise to several causes of action.

657 F.2d at 944 (citations omitted). While the above quoted language leaves open the possibility that one transaction may create more than one cause of action, *Harper Plastics* indisputably recognizes, and applies, the general rule that all claims arising out of a single transaction are one cause of action and must be raised in the same lawsuit. *Id.* at 944–46.

Juneau Square contends that *res judicata* does not bar the instant lawsuit because none of the asserted causes of action requires proof of the essential element (restraint upon competition) of the federal claim. Juneau Square apparently believes that, for purposes of *res judicata,* causes of action are not the same if one cause requires proof of an element that another cause does not. *Harper Plastics* plainly refutes that theory. The *Harper* court held that a state law breach of contract claim and a federal claim for violation of an antitrust statute were the

same cause of action for purposes of the rule against claim-splitting. *Id.* at 942. For purposes of *res judicata,* a basic factual situation generally gives rise to only one cause of action, no matter how many different theories of relief may apply. Applying the transactional analysis to the instant case, all of Juneau Square's asserted state claims arise out of the same conduct of the defendants-respondents that was alleged in the federal suit. The facts set forth in both the federal and state complaints are essentially the same. The matters raised in the state action are matters which could, and should, have been raised in the previous litigation.

Juneau Square contends First Wisconsin is estopped from asserting that the state claims are identical to the federal antitrust action. The gist of Juneau Square's argument centers on the federal district court's refusal, in the second trial, to instruct the jury on business tort theories. This refusal was certainly highly appropriate since Juneau Square did not plead business torts in its federal complaint. The court's action did not in any sense constitute a holding that the business tort claims were not identical to the federal antitrust action, for purposes of subsequent litigation. Juneau Square's estoppel argument is meritless.

Juneau Square claims that even if its state law claims are identical to its federal antitrust cause of action, it cannot be penalized for failing to ask the federal court to take pendent jurisdiction of its state law claims because Judge Warren made it clear in his decision granting a new trial that the second trial must be simplified: "In view of the complexity of the evidence and the legal principles, the possibility of jury confusion cannot be dismissed as idle speculation. A new trial limited to the single restraint of trade claim would remove much of this confusion." *Juneau Square,* 435 F. Supp. at 1325.

Evidently, Juneau Square believes Judge Warren would not have granted pendent jurisdiction, had such jurisdiction been requested.

First, it must be noted that the above cited opinion came almost five years after the filing of Juneau Square's complaint in 1972. It was at the time of filing that Juneau Square should have pled the state law theories of relief.

Second, Juneau Square's contention that pendent jurisdiction would have been refused is pure speculation. Juneau Square never requested it. *Harper Plastics* makes it clear that a plaintiff has the burden of requesting pendent jurisdiction of state claims by advancing those claims in its federal pleading.

Under the doctrine of pendent jurisdiction, a federal court is empowered to entertain state claims when "[t]he state and federal claims . . . derive from a common nucleus of operative fact." . . .

We fail to discern the unfairness in requiring a plaintiff to join all relevant theories of relief in a single proceeding. The uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources. If appellant entertained any doubts at the pleading stage, they should have been resolved in favor of joinder.

657 F.2d at 945-46 (citation omitted). It is too late for Juneau Square to cast doubt about whether the federal court would have taken pendent jurisdiction of its state law claims. Not having attempted joinder of its state law counts, Juneau Square's speculation is idle and irrelevant. Joinder is the proper device to preserve pendent state claims. *Id.* at 946.

■

Juneau Square claims First Wisconsin consented to the splitting of the claim and thus waived the defense of *res judicata*. We summarily reject this contention. First

Wisconsin (and all named defendants) raised the defense by responsive pleading: "Another action between the same parties and based, for the most part, upon substantially the same causes of action and upon the same set of operative facts is currently pending in [federal district court]."

Juneau Square argues that those of its co-plaintiffs who were dismissed out of the federal action for lack of standing are not bound by the federal judgment and must be permitted to bring their state law claims. Before the second trial, plaintiffs Wil-Ten Company, Inc., Jack D. Moertl, John F. Spoden, Harold C. Smith, Jr., Mildred B. Smith and Juneau Square Services, Inc., were dismissed for lack of standing to sue under the Clayton Act. The federal district court ruled that their injury, if any, was derivative, stemming from their positions as stockholders of Juneau Square and that the alleged conspiracy was not directed at them.

The dismissals of the above-named plaintiffs were based on their having no claims to assert. A dismissal for failure to state a claim is a judgment on the merits. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981). The instant dismissals were akin to dismissals for failure to state a claim. We hold that the judgment dismissing the above-named parties constituted a judgment on the merits. Accordingly, the dismissed plaintiffs are bound by the federal court judgment in favor of First Wisconsin and are thus precluded, under *res judicata* principles, from bringing their alleged state law claims.

Finally, Juneau Square argues that First Wisconsin's misconduct after the second federal trial vitiates its *res judicata* defense. First Wisconsin does not deny the alleged misconduct. Juneau Square cites Restatement

(Second) of Judgments § 24, comment f, for the proposition that a material change in circumstances may afford a basis for the bringing of a subsequent action not precluded by the prior judgment. Comment f provides, in part, as follows:

Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first. . . . Where important human values—such as the lawfulness of a continuing personal disability or restraint— are at stake, even a slight change of circumstances may afford a sufficient basis for concluding that a second action may be brought.

Comment f, as we understand it, suggests that post-judgment circumstances may form a basis for allowing a new lawsuit if the circumstances, either alone or in conjunction with antecedent facts, comprise a new "transaction" or cause of action. Thus, under comment f, *res judicata* might not preclude Juneau Square from filing a new lawsuit based on the alleged 1979 misconduct and offering evidence of previously litigated events to shed light on the subsequent acts. We do not, however, read comment f as sanctioning relitigation of the pre-judgment cause of action. We hold that the trial court was correct in concluding that comment f does not support permitting Juneau Square to relitigate the same acts complained of in federal court.

In conclusion, First Wisconsin's pleadings and other papers establish that the doctrine of *res judicata* precludes this action, and Juneau Square has set forth no facts which would defeat application of that doctrine. First Wisconsin is entitled as a matter of law to a judgment dismissing the action. We uphold the trial court's grant of summary judgment in favor of First Wisconsin.

*By the Court.*—Judgment affirmed.