# SOUTHERN WISCONSIN CATTLE CREDIT COMPANY, Plaintiff-Respondent,

v.

# Gary LEMKAU, Defendant-Appellant.†

Court of Appeals

*No. 86–1045. Submitted on briefs May 1, 1987.—Decided July 28, 1987.*

(Also reported in 412 N.W.2d 159.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

832

For the defendant-appellant, there were briefs submitted by *Wayne F. Plaza* and *Clifford E. Berman* of *Rooks, Pitts and Poust* of Chicago, Illinois and *Michael J. Lawton* of *Isaksen, Lathrup, Esch, Hart & Clark* of Madison.

For the plaintiff-respondent, there was a brief submitted by *Charles R. Wellington* of *Kittelsen, Barry, Ross and Wellington* of Monroe.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Gary Lemkau appeals replevin and deficiency judgments in connection with the repossession and sale of livestock and farm equipment by Southern Wisconsin Cattle Credit Company (Southern). He argues that: (1) The trial court improperly granted summary judgment for replevin in favor of Southern; (2) the trial court abused its discretion by allowing Southern's attorney to testify at the summary judgment hearing; (3) the trial court abused its discretion by refusing to grant Lemkau a continuance at the summary judgment hearing; and (4) the subsequent sale of the repossessed livestock and equipment was not performed in a commercially reasonable manner.

Southern asserts that we have no jurisdiction to hear Lemkau's first two arguments because he did not appeal within forty-five days of the original foreclosure judgment. We conclude that Lemkau's appeal was timely filed. We also conclude that the trial court properly ruled on each of the issues Lemkau raises on appeal. Accordingly, we affirm.

Lemkau first borrowed money from Southern in 1980 for his Green County farming operation. Person-

al property comprised of cattle and farm equipment secured the loan. In 1984, Southern expressed concerns about the farm operation and the condition of the collateral. Rather than renew the note, as it had previously done each year, Southern extended the 1984 note from its April 1985 expiration date to June 1, 1985. Lemkau defaulted, and Southern brought a replevin action on July 12, 1985.

Lemkau's attorney appeared for him at an October 15, 1985, summary judgment hearing. At that hearing, the trial court granted Southern's summary judgment motion for replevin of the collateral. Lemkau requested that he be allowed to obtain feed for the cattle and Southern consented. Lemkau, however, never did so and Southern took possession of the cattle on November 11. The animals, underfed and needing care, were transferred to another farm where they were fed and cared for in preparation for their sale. Southern sold the surviving cattle and the farm equipment at a public auction on December 17, 1985.

Southern then moved for confirmation of the sale and a deficiency judgment. The motion was heard in late January, 1986, then continued at Lemkau's attorney's request to April 24. Lemkau appeared pro se at the April hearing and requested another continuance. The court denied the continuance, finding that Lemkau had not exercised due diligence in obtaining new counsel. At the hearing, the court found that the sale had been accomplished in a commercially reasonable manner and granted Southern a deficiency judgment.

We first consider Southern's argument that Lemkau's June 1986 appeal of the October 1985 summary judgment granting replevin was untimely and thus

deprives this court of jurisdiction to consider the issues concerning the replevin judgment. An appellate court may proceed to a decision on the merits of the issues raised only if it has jurisdiction. *Walford v. Bartsch,* 65 Wis. 2d 254, 262, 222 N.W.2d 633, 638 (1974). Southern contends that the replevin judgment was final with respect to Lemkau and therefore Lemkau was required by statute to appeal within forty-five days of its entry. Section 808.04(1), Stats. We reject this argument.

Southern bases its contention on *Shuput v. Lauer,* 109 Wis. 2d 164, 325 N.W.2d 321 (1982). In *Shuput,* our supreme court held that a judgment of foreclosure and sale of real estate was not reviewable on appeal from the subsequent order confirming the foreclosure sale. *Id.* at 165, 325 N.W.2d at 323. The defendants in *Shuput* did not appeal the judgment of foreclosure and sale of their real estate until nearly a year later, following the judgment confirming sale. The defendants argued that the judgment of foreclosure and sale was interlocutory in nature and that the judgment confirming the sheriff's sale of the real estate was the only final order, appealable by right, in the action.

*Shuput* rejected this argument, citing the historical development of real estate foreclosure law and the Wisconsin statutory scheme that specifically designates real estate foreclosures as two-step actions:

> Wisconsin statutes provide for a foreclosure action that has two steps: The judgment of foreclosure and sale, and the proceedings after the judgment.
>
> The judgment of foreclosure and sale determines the parties' legal rights in the underlying obligation and in the mortgaged property and thus determines the default, the right of the mortgagee

835

to realize upon the security, the time and place of sale of the security and the notice required, and the right of the mortgagee to a judgment of deficiency....

The statutory proceedings after the judgment of foreclosure and sale, namely, the sale, judicial confirmation of the sale, the computation of the deficiency, and the entry of the judgment for deficiency, carry into effect and enforce the judgment of foreclosure and sale. ... The order confirming the sale, though a part of the foreclosure action, is distinct from the judgment of foreclosure and sale.

*Id.* at 169, 325 N.W.2d at 325.

In concluding that the judgment of foreclosure and sale of real estate was a final judgment, the *Shuput* court defined a final judgment as one that "terminates the litigation on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Id.* On the other hand, an interlocutory judgment is a "finding substantially disposing of a claim on its merits but leaving an account to be taken or a condition to be performed in order fully to determine the rights of the parties...." *Id.;* sec. 806.01(2), Stats. Because the judgment of foreclosure and sale determines the default, the mortgagee's right to realize upon the security, important sale details, and the mortgagee's right to a deficiency judgment, the litigation with respect to the mortgagor is effectively terminated. *Shuput,* 109 Wis. 2d at 171, 325 N.W.2d at 325.

Southern argues that the real estate foreclosure and sale judgment and the personal property replevin judgment are essentially analogous. Therefore, Southern urges, we should apply the logic of *Shuput* to the

836

facts in this case. For several important reasons, we decline to do so. First, Wisconsin's two-part real estate foreclosure procedure traces its roots to a distant period when strict foreclosure of real estate was the "prevailing remedy and the [foreclosure] decree operated simply to make the mortgagee's title absolute upon the expiration of a specified period for redemption." *Id.* at 170, 325 N.W.2d at 325.[1] In contrast, the statute governing the replevin action before us originated with Wisconsin's 1963 enactment of the Uniform Commercial Code (U.C.C.). *See* secs. 409.501 through 409.507, Stats.[2] The U.C.C.'s foreclosure remedies are cumulative (sec. 409.501(1)), and do not mandate distinct procedural stages. The U.C.C. remedies include repossession of collateral without judicial process (sec. 409.503) and strict foreclosure (sec. 409.505(2)), as well as foreclosure by sale (sec. 409.504(3)). Chapter 409's genesis and substantive provisions differ from those of ch. 846, governing real estate foreclosures.

More significant to determining the finality of the replevin judgment before us, however, is the nature of the judgment itself. Unlike a judgment of foreclosure and sale of real estate, this judgment did not determine the "time and place of sale of the security and the notice required, and the right of the mortgagee to a judgment of deficiency." *Shuput,* 109 Wis. 2d at 171, 325 N.W.2d at 325. Here, the sale's commercial reasonableness with respect to "every aspect of dispo-

---

[1] Quoting Rudolph, "*Wyoming Foreclosure Decrees—Personal Judgments and the Right to Jury Trial,*" 4 Land & Water L.Rev. 227 (1969).

[2] Section 1, ch. 158, Laws of 1963.

sition" remains subject to the debtor's challenge. Section 409.504(3), Stats. The secured party's right to a deficiency judgment remains inchoate until the secured party has demonstrated that its sale complied with ch. 409's requirements. *See, e.g., Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis. 2d 106, 203 N.W.2d 728 (1973) (secured party denied deficiency judgment because of failure to comply with ch. 409 sale requirements).

We therefore conclude that the judgment for replevin did not terminate the action with respect to Lemkau. The judgment was interlocutory in nature and was properly appealed from within the statutory period following the final judgment of confirmation of sale. We thus address each of the issues Lemkau raises on appeal.

Lemkau challenges the summary judgment for replevin in Southern's favor on two fronts. First, he contends that a material issue of fact remains as to whether the note Southern produced as evidence of the debt reflected the entire agreement between the parties. Second, Lemkau argues that Southern's practice of annually extending the note equitably estopped Southern from foreclosing because Lemkau detrimentally relied on Southern's conduct. We reject these arguments.

We apply the same standards used by the trial court in reviewing a summary judgment. *Juneau Square Corp. v. First Wisconsin Nat'l Bank,* 122 Wis. 2d 673, 681, 364 N.W.2d 164, 168 (Ct. App. 1985). Summary judgment is appropriate where the pleadings, depositions, affidavits and other papers on file show that there is no genuine issue of material fact

and that the moving party is entitled to a judgment as a matter of law. Section 802.08(2), Stats. The moving party makes a prima facie case for summary judgment by showing a cause of action that would defeat the other party. *Juneau Square,* 122 Wis. 2d at 681, 364 N.W.2d at 169. To defeat the prima facie case, the opposing party must set forth facts, by affidavit or other proof, showing there is a genuine issue for trial. *Leszczynski v. Surges,* 30 Wis. 2d 534, 539, 141 N.W.2d 261, 265 (1966). Such proof may be less than sufficient to prove the opposing party's case, but it must be substantial and raise a question of fact. *Id.* The showing of a genuine issue of fact must be by affidavit or other proof, and a party cannot rely on pleadings to perform that function. *Id.*

■    Lemkau has failed to show a genuine issue of material fact. At the October 15 summary judgment hearing, Lemkau appeared by his attorney, Charles A. Kaeding. Southern's motion incorporated an affidavit and the necessary documents to establish that Lemkau had defaulted on the promissory note and that Southern had a right to repossess the collateral. Kaeding's evidence contesting Southern's allegations merely reiterated the affirmative defense that Lemkau's answer raised: that the note was only a part of the agreement between the parties.

In ruling on the summary judgment motion, the trial court noted there was no factual evidence contesting the prima facie proof of default. Kaeding's only response was to argue, "Your honor, I believe our pleadings are quite clear that he is not in default of the entire agreement." Because Lemkau failed to offer any evidence showing the existence of additional

terms outside the written terms of the note and security agreement, we affirm the trial court's ruling.

Lemkau also argues that Southern's past annual renewals of the note induced him to detrimentally rely on future renewals. This is a meritless argument. The doctrine of equitable estoppel may be applied where action or nonaction on the part of the one against whom the estoppel is asserted induced reliance by another, either in the form of action or nonaction, to his detriment. *Gabriel v. Gabriel,* 57 Wis. 2d 424, 429, 204 N.W.2d 494, 497 (1973). Here, Southern declined to renew Lemkau's March 1984 note in March 1985. Instead, Lemkau entered into an extension due June 1, 1985. Lemkau introduced no affidavits or other documentary evidence to show any conduct on Southern's part that would have induced him to reasonably believe the several-month extension represented an annual renewal of the previous year's note. Lemkau offers nothing to show that Southern's conduct should require it to renew the note indefinitely in the face of Lemkau's uncontradicted default.

Lemkau also argues that in granting summary judgment, the trial court improperly relied on an affidavit by Southern's attorney. The affidavit alleged that Southern's attorney spoke with an Illinois attorney who purported to represent Lemkau. The attorney allegedly admitted that Lemkau could not make payments on the note and that the only thing the attorney could do for Lemkau was to "buy him some time." Lemkau argues that the summary judgment should be overturned because the affidavit was im-

840

proper and that Southern's attorney should have thus been disqualified.

Regardless of the affidavit's propriety and the court's refusal to disqualify Southern's attorney, Lemkau has not shown that the affidavit influenced the trial court. The court's reasoning for granting summary judgment does not reflect any consideration of Southern's implication that Lemkau was attempting to buy time while the cattle starved. The court's stated reasoning amply supports its decision.

■

Lemkau further argues that the trial court abused its discretion by denying him a continuance when he appeared pro se at the confirmation of sale hearing. We disagree. In denying the request, the court found that Lemkau had ample time to obtain new counsel after dismissing Kaeding. Lemkau admitted he was aware of the hearing date and had fired Kaeding at least a month before the scheduled hearing. We will not find an abuse of discretion unless there is no reasonable basis in the record for the trial court's decision. *WPS v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981). Here, the trial court considered the evidence before it and demonstrated a reasonable basis for its decision.

■

Finally, Lemkau argues that the foreclosure sale was not conducted in a commercially reasonable manner as required by sec. 409.504(3). This argument is meritless. Southern took possession of the cattle and equipment shortly after entry of the replevin judgment. Southern transferred the 100 head of cattle to another farm where they were cared for and fed. The cattle were in poor condition and twelve of them had to be culled for slaughter because of irreversible

841

mastitis. The remaining cows thrived and gained between 100 and 200 pounds each. Southern chose the date of December 17 for the auction for several reasons: First, it followed deer hunting season and more potential bidders would be present than if held during the season. Second, the cows had not been bred back and were consequently reaching the end of their milk-giving stage. After they stopped lactating, their value would decline. Third, a December 17 sale could be combined with another scheduled for the same day that was expected to be well-attended.

The experienced auction company chosen by Southern to sell the collateral advertised the sale by posting 300 bills in southern Wisconsin and northern Illinois, ran advertisements in local newspapers, and advertised the sale on radio and in farm trade journals. The sale drew 200 persons, and the bidding was active. The auction company made some repairs before selling the deteriorating farm equipment. The cattle were shown individually on a well-lighted, raised platform in comfortable surroundings. Southern's witnesses testified that, given the condition of the collateral, it attracted fair prices. Lemkau produced no contradictory evidence.

The trial court endorsed Southern's evidence of the facts surrounding the sale. These findings were not clearly erroneous. Section 805.17(2), Stats. Accordingly, we conclude that every aspect of the sale was conducted in a commercially reasonable manner.

*By the Court.*—Judgment affirmed. No costs are awarded to either party.