12 F.3d 686
 CRAIGS, INCORPORATED, Plaintiff-Appellant/Cross-Appellee,
v.
GENERAL ELECTRIC CAPITAL CORPORATION,
Defendant-Appellee/Cross-Appellant,
and
Associates National Bank, Defendant-Appellee.
 Nos. 92-3200 and 92-3356.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 4, 1993.
Decided Dec. 21, 1993.
 
 Harvey J. Goldstein (argued), Hiller & Frank, Milwaukee, WI, for plaintiff-appellant.
 Bruce R. Bauer (argued), Harry G. Holz, Quarles & Brady, Milwaukee, WI, for General Elec. Capital Corp.
 James W. Greer, Barbara J. Janaszek (argued), Whyte & Hirschboeck, Milwaukee, WI, for Associates Nat. Bank.
 Before CUDAHY, FLAUM, and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 In 1983, Craigs, Incorporated, ("Craigs") a Wisconsin retailer, entered into a Revolving Credit Merchant Agreement ("Agreement") with General Electric Capital Corporation ("GECC") of New York. Pursuant to the Agreement, Craigs agreed to sell to GECC certain of its private label credit card accounts with customers of the retail stores it owned and operated. Customers of the Craigs stores would purchase merchandise using the "Craigs" credit cards and Craigs would then sell these accounts, including their outstanding balances, to GECC. The agreement allowed GECC to collect and service the credit card accounts, but Craigs retained the right to issue the credit cards.
 
 
 2
 Shortly before November 6, 1989, GECC notified Craigs that it had sold some of the accounts it purchased from Craigs to Associate National Bank ("ANB") of Connecticut and that ANB planned to replace the private label "Craigs" credit cards with "Visa" cards. At the same time, GECC provided 90 days notice of its intent to terminate the Agreement.[1] GECC followed its verbal notification with a letter to Craigs dated November 6, 1989, confirming its intention to terminate the Agreement. In the letter, GECC stated that it expected Craigs to honor its obligation to repurchase any accounts held by GECC upon termination of the Agreement.
 
 
 3
 On November 14, 1989, GECC notified Craigs' customers in writing, and without Craigs' permission, that their "Craigs" accounts had been purchased by ANB and that ANB would be servicing those accounts. On the same day, also without the knowledge or permission of Craigs, ANB sent letters to Craigs' customers advising them that ANB would be servicing their "Craigs" credit card accounts and would be replacing them with "Visa" credit cards. ANB also instructed holders of the "Craigs" credit cards to destroy those cards because they would no longer be valid, even though Craigs intended to continue to issue and honor its private label credit cards.
 
 
 4
 Nineteen months later Craigs filed this action, alleging that GECC's sale of accounts to ANB constituted breach of contract, negligence, breach of the implied warranty of good faith, and intentional interference with a contract. Craigs also alleged that ANB committed the tort of conversion by instructing Craigs' customers to destroy their existing credit cards and replacing them with "Visa" cards.[2] GECC filed a counterclaim for attorney's fees and other costs incurred in defending against the suit filed by Craigs. Both GECC and ANB filed motions for judgment on the pleadings. Craigs also filed a motion for judgment on the pleadings with respect to GECC's counterclaim for litigation expenses. The district court entered judgment in favor of GECC and ANB, finding that Craigs had sold all of its interest in the accounts and thus had no right to prevent GECC from disposing of the accounts as it saw fit. The district court found in favor of Craigs on GECC's counterclaim and determined that the indemnity clause only applied to third parties.
 
 ISSUES
 
 5
 Craigs raises two issues on appeal. (1) Whether the district court failed to consider the plain language of the entire Agreement and thus, erroneously found that Craigs had no right to repurchase the accounts in question and (2) whether, based on GECC's conduct, it should be equitably estopped from exercising its right to sell those accounts.
 
 DISCUSSION
 
 6
 We review de novo Rule 12(c) motions for judgment on the pleadings. Fallimento C.op.M.A. v. Fischer Crane Co., 995 F.2d 789, 791 (7th Cir.1993). A motion under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12. Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir.1989). "Accordingly, the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." Id. We view the facts in the complaint in the light most favorable to the non-moving party. Id.
 
 
 7
 All parties agree that Wisconsin law controls this case. In interpreting a contract under Wisconsin law, "[a] court may not depart from the plain meaning of a contract where it is free from ambiguity." Hortman v. Otis Erecting Co., 108 Wis.2d 456, 322 N.W.2d 482, 484 (Ct.App.1982) (quoting Dykstra v. Arthur G. McKee & Co., 92 Wis.2d 17, 284 N.W.2d 692, 702-703 (Ct.App.1979), aff'd, 100 Wis.2d 120, 301 N.W.2d 201 (1981)). Moreover, "when parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court has no right by process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made." Id. 322 N.W.2d at 485. "Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction." Katze v. Randolph & Scott Mut. Fire Ins. Co., 116 Wis.2d 206, 341 N.W.2d 689, 692 (1984) (citations omitted). "The interpretation of an unambiguous contract presents a question of law which we review de novo." Micro-Managers, Inc. v. Gregory, 434 N.W.2d 97, 100 (Wis.Ct.App.1988) (citing Schmitz v. Grudzinski, 141 Wis.2d 867, 416 N.W.2d 639, 641 (Ct.App.1987)).
 
 A.
 
 8
 Craigs argues that the district court failed to consider all relevant portions of its Agreement with GECC and therefore erroneously found that Craigs had no right to repurchase the accounts it sold to GECC. Specifically, Craigs contends that the district court failed to consider the language of section 21, subsection (b) and reconcile it with the language of section 21, subsection (a). Craigs claims that, read together, these two subsections give it a right to repurchase any accounts held by GECC during the 90 day period between notice of termination and the actual termination itself. We disagree.
 
 
 9
 Section 21, subsection (a) states: "Upon termination of this Agreement by either party in accordance with Section 20, ... [Craigs] shall repurchase all Accounts held by GECC on the date of such repurchase...." Subsection (b) states that "If, upon the expiration or termination of this Agreement ... [Craigs] shall not repurchase all Accounts then held by GECC for the said repurchase price, then GECC shall have the right, in addition to and without waiving all other rights it may have under the terms of this Agreement or under applicable law (i) to liquidate the remaining Accounts in any lawful manner which may be expeditious or economically advantageous to GECC...."
 
 
 10
 The district court found, and we agree, that subsection (a) imposes a contractual duty on Craigs to repurchase accounts held by GECC upon termination of the Agreement, but does not give Craigs any contractual right to repurchase those accounts. Moreover, we believe that subsections (a) and (b) unambiguously apply only to those accounts held by GECC upon termination of the Agreement. Section 21 is specifically entitled "Rights Upon Termination of Agreement," and both subsections (a) and (b) contain the phrase "upon termination of this Agreement." Further, subsection (b) speaks only to what happens "upon the expiration or other termination" of the Agreement if Craigs does "not repurchase all accounts then held by GECC." Neither subsection (a) nor (b) applies to accounts held by GECC before termination of the Agreement. Thus, this section does not apply to this case because Craigs admits that the accounts in question were sold shortly before the beginning of the 90 day notice of termination period.
 
 
 11
 Moreover, it is clear from interpreting the language of the Agreement as a whole, as we are required to do, Mutual Fed. S & L Assn. v. Wisconsin Wire Works, 58 Wis.2d 99, 205 N.W.2d 762, 766 (1973) ("Language of contract is to be considered as a whole"), that the parties intended for GECC to be the absolute owner of the accounts. In section 3 of the Agreement, "[Craigs] agree[d] to offer to sell to GECC ... all of ... [Craigs'] Accounts and GECC agree[d] to purchase all of such Accounts which conform[ed] to GECC's prevailing standards...." The parties defined the term account broadly:
 
 
 12
 "Account" means an agreement, secured or unsecured, between a Buyer and a Merchant pursuant to which the Buyer is permitted to purchase, from time to time, Merchandise and/or other Services from Merchant or Merchant's leased departments and/or concessionaires on credit and pursuant to which the buyer may have the privilege of paying the purchase price or the balance thereof in installments, such purchase price or balance thereof being subject to a finance charge expressed as a percentage of the unpaid balance outstanding, from time to time, under the said agreement. The term "Account" shall include, without limitation, all of the following which relate to Accounts: (i) any and all invoices, sales slips, billing statements, applications, contracts, claims, documents, instruments, agreements, open accounts, chattel paper, choses in action, contract rights, correspondence, written material and other memoranda related to, comprising, evidencing or securing the relevant obligation, (ii) Merchant's rights as to any Merchandise, goods and/or other property that stand as collateral or as security for the repayment of indebtedness represented thereby, (iii) the monies due or to become due to Merchant thereunder, (iv) any Receivable arising out of or related to an Account; and (v) unless the context does not permit, a Portfolio Account; and (vi) all proceeds of all of the foregoing.
 
 
 13
 This provision demonstrates the parties' intention that GECC acquire complete and absolute ownership of the underlying agreements between Craigs and its customers, not merely the accounts receivable.
 
 
 14
 The Revolving Charge Agreement between Craigs and its credit card customers also shows that Craigs intended to assign those agreements entirely to GECC. That agreement states: "It is expected that this agreement and purchases made under it will be submitted for approval to ... (GECC) without further notice to ... [Craigs' customers] and, if approved, will be assigned to GECC. All of Seller's rights under this agreement also apply to any assignee or holder of this agreement." Thus, Craigs specifically acknowledged that all of its rights in the credit card accounts were to be assigned to GECC.
 
 
 15
 Further, in section 22(m) of the Revolving Credit Merchant Agreement, Craigs warrants that "upon the sale of ... [an] Account to GECC, GECC shall be vested with full and complete title to each such Account free and clear of any and all claims, liens or encumbrances of any kind whatsoever." Such language unambiguously indicates that GECC was to be vested with complete ownership of the accounts. As such, Craigs cannot now complain about GECC's resale of those accounts to ANB. Craigs gave up any rights it had in the accounts upon their sale to GECC.
 
 B.
 
 16
 Craigs argues that GECC should be estopped from asserting its contractual right to sell the accounts on the basis of GECC's November 6th notice of termination letter. In that notice, GECC stated that "[u]pon the effective date of termination, GE capital will expect ... [Craigs] to promptly honor your repurchase obligations to GE capital as set forth in Paragraph 21 of the Agreement...." Craigs contends that the language of this letter constitutes a promise by GECC not to dispose of the accounts during the 90 day notice of termination period and that Craigs justifiably relied on that promise to its detriment. We disagree.
 
 
 17
 "Estoppel may be applied where action or nonaction on the part of the one against whom the estoppel is asserted induced reliance by another, either in the form of action or nonaction, to his detriment." Gonzalez v. Teskey, 160 Wis.2d 1, 465 N.W.2d 525, 530 (Ct.App.1990) (citing Southern Wis. Cattle Credit Co. v. Lemkau, 140 Wis.2d 830, 412 N.W.2d 159, 163 (Ct.App.1987)). Craigs, however, is unable to show that it took any action or refrained from taking any action in reliance upon GECC's November 6th notice of termination letter. Moreover, even if Craigs did in fact rely on the language contained in that letter, such reliance was not justified. Craigs admits that it knew before receipt of the November 6th letter that GECC had sold the accounts to ANB. Thus, Craigs was already aware that GECC's conduct was entirely inconsistent with a promise to hold the accounts for Craigs to repurchase. Therefore, any reliance on the language in GECC's notice of termination letter was not justified.
 
 
 18
 Furthermore, the November 6th letter informed Craigs that GECC expected Craigs to honor its repurchase obligation upon termination of the Agreement. As discussed previously, this repurchase obligation only takes effect on the date of the actual termination of the Agreement and only applies to accounts then held by GECC. The language of this letter in no way can be reasonably construed as a promise by GECC to hold accounts during the 90 day notice of termination period for resale to Craigs.
 
 
 19
 Inasmuch as we find that GECC obtained complete ownership rights in the accounts it purchased from Craigs, we need not discuss Craigs' numerous claims for relief against ANB. All of these claims arise out of the Agreement between Craigs and GECC and are premised on Craigs' view that GECC's sale of accounts to ANB violated that Agreement. However, because the sale of accounts to GECC was absolute, ANB owed no contractual duties, implied or otherwise, to Craigs. Thus, whatever else can be said, ANB was acting within its legal rights when it substituted "Visa" credit cards for the "Craigs" cards.[3]
 
 GECC'S CROSS-APPEAL
 
 20
 GECC cross-appeals the district court's grant of Craigs' motion for judgment on the pleadings dismissing GECC's counterclaim for litigation expenses. GECC bases its argument on section 19(a) of its Agreement with Craigs. The relevant portion of that section provides:
 
 
 21
 Merchant agrees to protect, indemnify and hold GECC harmless against and in respect of any and all liabilities, expenses (including legal fees), judgments, damages, claims, actions or proceedings by whomsoever asserted, including, but not limited to, (i) the Buyers or other persons responsible for the payment of Accounts sold by Merchant hereunder, (ii) any person or persons who prosecute or defend any proceedings as representatives of or on behalf of a class or interested group, or (iii) any government instrumentality, arising out of, connected with or resulting from any misfeasance, malfeasance or fraudulent acts of any of Merchant's employees, officers, directors, shareholders, agents or licensees or any independent contractors hired by Merchant, any breach of warranty on Merchant's part in relation to the Accounts sold to GECC, or any breach by Merchant of the terms, covenants, warranties, conditions or other provisions hereof, or contained in any other instrument or document delivered by Merchant in connection herewith, or pursuant hereto, or any claim, demand, allegation, offset, defense or counterclaim which, if true or proven, would constitute such a breach.
 
 
 22
 GECC argued to the district court that section 19(a) requires Craigs to indemnify GECC for its expenses, including attorney's fees, incurred in defending against this suit. GECC reasoned that the term "whomsoever" in section 19(a) includes suits brought by Craigs itself. The district court found the term ambiguous because it is "reasonably and fairly susceptible to more than one construction." Jones v. Jenkins, 88 Wis.2d 712, 277 N.W.2d 815, 819 (1979). The court stated that "[t]he word 'whomsoever' could mean either all parties including Craigs or merely all third parties." However, it found that the term referred only to third parties, to avoid the possible absurd result of requiring Craigs to indemnify GECC even when it brought a successful suit against GECC. GECC argues on appeal that the Agreement unambiguously requires Craigs to indemnify GECC for its litigation expenses.
 
 
 23
 As previously indicated, under Wisconsin law, whether a contract term is ambiguous is a question of law for the trial court. Micro-Managers, Inc., 434 N.W.2d at 97. If the trial court determines that the contract is plain and unambiguous, it must "construe the contract as it stands." Bank of Barron v. Gieseke, 169 Wis.2d 437, 485 N.W.2d 426, 432 (Ct.App.1992) (citing Borchardt v. Wilk, 156 Wis.2d 420, 456 N.W.2d 653, 656 (Ct.App.1990)). However, if the trial court determines that a contract term is ambiguous, the ambiguity becomes a question of the parties' intent for the trier of fact to resolve using extrinsic evidence. Energy Complexes, Inc. v. Eau Claire County, 152 Wis.2d 453, 449 N.W.2d 35, 40 (1989).
 
 
 24
 We must begin our analysis by independently determining whether the term "whomsoever" is ambiguous. We agree with the district court that the indemnity clause can be "reasonably and fairly" read as either a promise by Craigs to indemnify GECC only against claims brought by third parties or as a promise to indemnify GECC against all claims, including those brought by Craigs. If the parties had unambiguously intended for Craigs to indemnify GECC for expenses incurred in defending suits brought by Craigs itself, then they could have specifically listed Craigs as being covered by the indemnity provision, as was done for buyers and government actors. Absent a clearer demonstration of the parties' intent, we are constrained to find that the term "whomsoever" is ambiguous.
 
 
 25
 Resolution of this ambiguity is a question of fact that must be resolved by the trier of fact. As such, the district court's grant of Craigs' motion for judgment on the pleadings must be vacated. Because "a material issue exists concerning the parties' intent, ... the non-moving party has the right to present extrinsic evidence regarding the meaning of the contested term." Wards Co. v. Stamford Ridgeway Assocs., 761 F.2d 117, 120 (2d Cir.1985); accord Cargill Coal Co. v. Valentine, 275 Wis. 598, 82 N.W.2d 883, 886 (1957). Accordingly, on remand, GECC must be afforded the opportunity to present extrinsic evidence concerning the meaning of the term "whomsoever." Craigs must also be afforded the opportunity to present its own evidence concerning the meaning of the disputed term.
 
 
 26
 For the reasons discussed above, we AFFIRM the district court's grant of GECC's and ANB's motions for judgment on the pleadings. We VACATE the district court's grant of Craigs' motion for judgment on the pleadings with respect to GECC's indemnity claim and REMAND this case to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The 90 day notice of termination was required by section 20 of the Agreement
 
 
 [2]
 Craigs also alleged the theories of negligence, breach of the implied warranty of good faith and intentional interference with a contract
 
 
 [3]
 Even though ANB was acting within its legal rights, such action strikes us as "hard ball" tactics which the Milwaukee based retailer had not expected. As usual, its not what you do but how you do it that sets the tone